# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DAVINA M. ROSS,**

    **Plaintiff,**

    v.      Case No. 08-C-450

**MICHAEL J. ASTRUE,**
**Commissioner of the Social Security Administration,**

    **Defendant.**

# DECISION AND ORDER

## NATURE OF CASE

The plaintiff, Davina M. Ross ("Ross"), commenced this action on May 21, 2008, seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for supplemental security income under Title XVI of the Social Security Act. Ross's appeal will be addressed herein.

## PROCEDURAL HISTORY

On July 18, 2005, Ross filed an application for supplemental security income. (Tr. 63-65.) Ross's application was denied initially and upon reconsideration. (Tr. 42-45, 47-50.) Pursuant to Ross's request, a hearing was held before an administrative law judge ("ALJ") on November 13, 2007. Ross, who was represented by counsel, appeared and testified. (Tr. 294-316.) A vocational expert also testified at the hearing. (Tr. 318-325.)

In a December 19, 2007, decision, the ALJ denied Ross's claim. (Tr. 16-27.) Ross was born on December 11, 1962, and at the time of the ALJ's decision, was forty-five years old. Ross completed the 10th grade. She lives with her grandmother and aunt. Ross's work history includes work as a packer for a few months and as an assembler.

The ALJ conducted the standard five-step evaluation to determine whether Ross is disabled. At step one, the ALJ determined that Ross had not engaged in substantial gainful activity since July 18, 2005, the date she filed for supplemental security income. At step two, the ALJ determined that Ross has the severe impairments of polymyalgia,[1] rheumatica,[2] degenerative disc disease of the C & L spine, mild carpal tunnel syndrome, headaches and depression. (Tr. 18.) At step three, the ALJ determined that Ross's impairments or combination of impairments did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"). The ALJ next determined that Ross's residual functional capacity was for simple, routine and repetitive sedentary work. (Tr. 19.) The ALJ reasoned that the residual functional capacity was appropriate because no greater or additional limitations were justified by the medical evidence and Ross's complaints were not entirely credible. The ALJ consulted a vocational expert who opined that Ross could engage in representative occupations such as assembly, order filler and information clerk. (Tr. 25-6.) At step five, the ALJ agreed that Ross could engage in this work and, therefore, concluded she was

---

[1] Polymyalgia is defined as pain in several muscle groups. *Stedman's Medical Dictionary* 1536 (28th ed. 2006).

[2] Rheumatica is defined as a syndrome within the group of collagen diseases different from spondylarthritis or from humeral scapular periarthritis by the presence of an elevated sedimentation rate; much commoner in women than in men. *Stedman's* at 1536.

not disabled. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Ross's request for review on April 4, 2008. (Tr. 5-7.)

## APPLICABLE LAW

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental impairments prevent her from doing not only her previous work, but any other substantial gainful employment which exists in the national economy considering her age, education and work experience. 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is so disabled, the ALJ is required to evaluate in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether her impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"), which the Commissioner acknowledges to be conclusively disabling; (4) whether the claimant possesses the residual functional capacity to perform her past relevant work; and (5) whether the claimant is capable of performing any other work existing in significant numbers in the national economy given her age, education, and work experience. *See Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *Wolfe v. Shalala*, 997 F.2d 321, 322-3 (7th Cir. 1993). If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must demonstrate that she lacks the

residual functional capacity to perform her past work. The claimant bears the burden at steps one through four. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Once step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. *Id.*; *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Knight*, 55 F.3d at 313. The process is sequential and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then the ALJ need not progress to the next step. 20 C.F.R. § 404.1520(a)(4).

Review of the Commissioner's decision is limited. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the finding of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Clifford*, 227 F.3d at 869. Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007) ("Substantial evidence must be more than a scintilla but may be less than a preponderance.") (citation omitted). This Court reviews the entire administrative record but does not reconsider facts, reweigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869. However, even if substantial evidence supports the Commissioner's findings, this Court may reverse if the ALJ committed an error of law. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

**ANALYSIS**

In this case, the ALJ conducted the standard five-step evaluation to determine whether Ross is disabled and denied Ross's claim at step five. On appeal, Ross contends the ALJ's decision is not supported by substantial evidence and contains errors of law and asserts several challenges to the ALJ's decision. Ross first argues that the ALJ improperly discounted Ross's testimony regarding the severity of her symptoms. (Plaintiff's Memorandum in Support of Motion for Summary Judgment or Remand ("Plaintiff's Mem.") at 9-12.)

In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, measures used to relieve the pain, and limitations. *See* 20 C.F.R. § 416.929(c); SSR 96-7p. An ALJ's credibility finding must be justified with specific reasons. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). The ALJ's credibility determination is entitled to special deference because the ALJ is in the "best position to see and hear witnesses and assess their forthrightness." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Accordingly, an ALJ's credibility determination will not be disturbed unless it is "patently wrong" and not supported by the record. *Jens v. Barnhart,* 347 F.3d 209, 213 (7th Cir. 2003).

The ALJ determined that Ross's statements concerning the intensity, persistence and limiting effects of her symptoms "are not entirely credible." (Tr. 20.) The ALJ discussed the medical evidence and determined that the "objective evidence does not support the claimant's allegations of disabling physical and mental limitations." (Tr. 23.) The ALJ noted that Ross's treatment history has been "spotty," which the ALJ acknowledged could be due to insurance issues, and that when treated, her doctors generally provided "conservative, minimal and routine

- 5 -

treatment." (Tr. 24.) The ALJ determined that this history of treatment did not corroborate Ross's allegations. The ALJ noted that Ross visits with a friend and her father and attends a church and bible study once a week. The ALJ further noted that Ross takes pain medication and Prednisone, which makes her sleepy. Taking all these factors into account, the ALJ did not deny that Ross has pain and other symptoms, but that Ross is not so limited that she is unable to perform the minimal demands of sedentary work activity. (Tr. 24.)

Ross claims that the ALJ relied solely on the objective medical evidence in making her credibility finding. This is simply incorrect. While the ALJ did appear to be concerned with the lack of objective medical evidence in the record, the ALJ identified all of the factors in Social Security Ruling 96-7p and listed reasons for finding Ross not credible. The ALJ did consider that Ross's objective test results were relatively normal.[3] The ALJ considered Ross's daily activities noting that Ross visited with a friend and her father and attended church and a bible study. The ALJ also considered the side effects of Ross's medication and explained that due to Ross's complaints of pain, headaches and medication, the ALJ limited Ross to simple, repetitive

---

[3] For example, examination of Ross by Peter Pick, M.D. ("Pick") in August, 2005, revealed chronic degenerative osteoarthritis involving the right shoulder joint and the cervical to sacral spine; mild chronic right lumbar L5 radiculopathy due to lumbar spinal stenosis with bulging lumbosacral discs from L3-S1; mild peripheral neuropathy involving the right upper extremity which was probably due to right carpal tunnel syndrome and right inguinal pain due to an inguinal hernia and mild chronic depression of the situational type due to her chronic medical condition. (Tr. 21 citing Ex. 13F.) On December 14, 2005, Ross was examined by Lawrence Frazin, M.D. ("Frazin"). Frazin reviewed the CT scan of her lumbar spine and stated it showed minimal degenerative changes and was essentially unremarkable. (Tr. 21 citing Ex. 30F.) The ALJ also discussed that from November 22, 2005, until August 9, 2007, Ross was treated by Arthur Mines, M.D. ("Mines"). Mines generally noted Ross's complaints of neck and back pain, but except for tenderness and sometimes limited range of motion, he reported no significant clinical findings. (Tr. 21 citing Ex. 29F.)

and routine sedentary work with no exposure to hazards. (Tr. 24.) Therefore, the ALJ's credibility decision was not based solely on objective medical evidence.

The ALJ provided good reasons for her credibility finding and Ross has not shown that those reasons are patently wrong. The ALJ's credibility determination is entitled to deference. *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004) (a credibility determination will be affirmed "as long as the ALJ gives specific reasons that are supported by the record for his finding. . . . The ALJ thus complied with SSR 96-7p by providing specific reasons for his finding."). In this case, the ALJ's credibility determination meets the standard in *Skarbek* and is affirmed.

Ross argues that the ALJ improperly discounted the opinions of Ross's treating physicians, failed to consider the combined effects of Ross's impairment, and therefore, the ALJ's conclusion that Ross possessed a residual functional capacity for sedentary work lacks evidentiary support. (Plaintiff's Mem. at 13.) In particular, Ross contends that the ALJ erroneously determined that Ross could work at a sedentary job, yet no doctor opined that Ross could do sedentary work. Ross's treating physician opined that Ross was "permanently disabled," while the state agency physician determined that Ross could perform "light work activity." Ross contends that the ALJ "split the medical opinions down the middle and gave an unsupported finding." (Plaintiff's Mem at 13.)

The Court notes that there is an opinion in the medical record that Ross retained the ability to perform sedentary work. The state agency physician first opined that Ross retained the ability to perform sedentary work and later opined that Ross retained the ability for light work. (Tr. 170, 227.) Moreover, a claimant is not entitled to disability benefits simply because her

- 7 -

physician states she is "disabled" or unable to work. "The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). The Court of Appeals for the Seventh Circuit has regularly noted that "the claimant's regular physician may not appreciate how her patient's case compares to other similar cases, and therefore, . . . a consulting physician's opinion might have the advantages of both impartiality and expertise. *Id.* (citing *Stephens v. Heckler*, 766 F.2d 284, 289 [7th Cir. 1985]). In this case, the ALJ reasonably resolved conflicting medical evidence, which is precisely the role of the ALJ. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) supported by medical findings; and (2) consistent with substantial evidence in the record. *Skarbek*, 390 F.3d at 503; 20 C.F.R.§ 404.1527(d)(2). However, "while the treating physician's opinion is important, it is not the final word on a claimant's disability . . . [as a] patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996).

Ross argues that the ALJ failed to provide good reasons for rejecting the opinion of Mines regarding Ross's capacity for working. The ALJ, however, carefully explained that she rejected Mines's opinion because it was "unsupported by his own unremarkable clinical findings in his own treatment notes." (Tr. 24 citing Ex. 29F.) For example, Mines opined that Ross could use her hands 20% of the day, yet, she was diagnosed with mild chronic carpal tunnel syndrome and was prescribed a right hand wrist splint to wear when she slept. (Tr. 24.) The AL reasonably concluded that Mines's completed form, detailing drastic limitations, was not supported by his

- 8 -

own clinical notes. The ALJ's rejection of Mines's conclusion was reasonable because the working limitations Mines set forth for Ross were not detailed in or corroborated by Mines's clinical notes. The Court concludes that the ALJ's conclusion discounting the opinion of Mines is supported by an adequate explanation and is reasonable. In this case, the ALJ built the requisite "accurate and logical bridge" from the evidence to her conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Ross further contends that the ALJ's decision demonstrates that the ALJ is not familiar with polymyalgia rheumatica,[4] the impairment cited by Mines as disabling. The ALJ discussed that in Feburary, 2006, Pick examined Ross and opined that Ross had chronic daily headaches of the tension type, chronic polyarthritis involving the spine and shoulders with chronic diffuse myalgias. Pick further opined that "[t]he etiology may be polymyalgia rheumatica." (Tr. 22 citing Tr. 202.) The ALJ further noted that Ross was given a trial low dose of Prednisone and Indomethacin HCI. (Tr. 22.)

The ALJ also discussed Ross's treatment history with Mines. On September 10, 2007, Mines reported Ross's complaints of a stiff neck and back with occasional weakness. On

---

[4] In polymyalgia rheumatica, the lining of some joints (such as those in the neck, shoulders, and hips) becomes inflamed, causing muscle pain and stiffness. Polymyalgia rheumatica affects 7 out of 1,000 people over 50 and is more common in women than men. *See* Merck Manual Online at http://www.merck.com. The Merck Manual is cited by Ross in a March 7, 2008, letter to the Appeals Council. (Tr. 290.) Polymyalgia rheumatica responds to a low daily dose of prednisone that is increased as needed until symptoms disappear. Most patients can discontinue medication after 6 months to 2 years. If symptoms recur, prednisone treatment is required again. Even without treatment, polymyalgia rheumatica usually disappears in one to several years. With treatment, however, symptoms disappear quickly, usually in 24 to 48 hours. *See* National Institute of Arthritis and Musculoskeletal and Skin Diseases website at http://www.nlm.nih.gov/medlineplus/polymyalgiarheumatica.html. *See* Defendant's Memorandum in Support of the Commissioner's Decision at pg. 10 n.1.

examination, except for Ross's decreased range of back and neck motion and tenderness across the back, Mines reported no other significant abnormalities. (Tr. 22 citing Tr. 253.) Mines prescribed Prednisone which Ross stated had been helpful in the past. On October 10, 2007, Mines noted that Ross had relief with Prednisone and that her pain returned the day after she took her last tab. Mines diagnosed chronic neck and back pain and except for her decreased range of back motion with tenderness, he reported no other clinical findings. (Tr. 22 citing Tr. 252.) The Court concludes that the ALJ thoroughly and reasonably discussed the medical evidence, including polymyalgia rheumatica, and determined that the evidence supported a finding that Ross could perform the minimal exertional demands of sedentary work.

This case is not similar to those where the ALJ does "play doctor." The cases in which a reviewing court has determined that an ALJ impermissibly "played doctor" are "ones in which the ALJ failed to address relevant evidence." *Dixon*, 270 F.3d at 1177. Throughout her opinion, the ALJ thoroughly discussed the medical evidence. The ALJ's discounting of Mine's limitations placed on Ross is not simply the personal belief of an ALJ "playing doctor," it is supported by substantial evidence in the record.

Ross argues that the ALJ did not comply with Social Security Rule 96-8p, which requires that the ALJ evaluate all the relevant evidence in the record in order to conduct a function-by-function analysis of a claimant's capacity for work, in order to determine the claimant's residual functional capacity. Ross contends that the ALJ failed to take into consideration any hand or mental impairments despite the ALJ's finding that Ross's mild carpal tunnel syndrome and depression were severe impairments.

- 10 -

The Social Security Regulations require that the ALJ undertake a "function-by-function" analysis of the claimant's capacity to work according to exertional categories.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy and very heavy.

SSR 96-8p. In this case, the ALJ met her burden under Social Security Ruling 96-8p. The ALJ specifically determined that Ross could perform sedentary work which involves sitting for six hours in an eight hour day, standing and walking for up to two hours in a day, and lifting less than 10 pounds frequently and up to 10 pounds occasionally. (Tr. 19). The ALJ also determined that Ross must avoid exposure to hazards, such as moving machinery or heights. (Tr. 19.) The ALJ determined that no restrictions were needed based on Ross's depression. (Tr. 23.) The ALJ need not conduct a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record. The ALJ noted that there was little evidence of any treatment for depression and there was no significant findings on mental status examinations. Pick diagnosed only "mild" depression. (Tr. 162.) The state agency physician reviewed Ross's records twice and opined both times that she did not have a severe mental impairment. (Tr. 177, 232, 244.) Dr. Rattan made a similar conclusion. (Tr. 197.) The ALJ took Ross's headaches into consideration in reducing her residual functional capacity to sendetary. The ALJ explained that Ross had only "mild" carpal tunnel syndrome and none of the state ageny physicians opined that Ross needed an accommodation concerning her hands. (Tr. 24.)

The ALJ noted the need to consider all of Ross's impairments both severe and non-severe, in making her residual functional capacity finding. The ALJ specifically noted that Ross did not have a "combination of impairments" that satisfied the regulatory requirements for a disability finding. *Nelson v. Bowen*, 855 F.2d 503, 508 (7th Cir. 1988) (finding that an ALJ's statement that "[t]he evidence does not show any medically determinable impairments which, singly or combined, preclude claimant from engaging in substantial gainful activity" showed that the ALJ considered the combined effects of the claimant's impairments). In this case, the ALJ considered the "combination of impairments" (Tr. 18) and thoroughly discussed the medical evidence in her decision. (Tr. 20-25.) This is sufficient articulation to demonstrate that the ALJ considered the cumulative effects of Ross's impairments. This Court will give the ALJ's opinion "a commonsensical reading rather than nitpicking at it." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).

Ross argues that the ALJ presented a flawed residual functional capacity to the vocational expert, resulting in an inaccurate step five finding. The validity of a vocational expert's testimony "depends on whether the administrative law judge accurately described [the claimant's] condition to him." *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004). As previously discussed, this Court concludes that the ALJ thoroughly discussed and correctly evaluated the medical evidence in making her decision regarding Ross's limitations and properly incorporated those limitations into Ross's residual functional capacity. Contrary to Ross's assertions, the Court finds that the ALJ accurately described Ross's condition to the vocational expert.

The vocational expert identified three representative occupations that a claimant with the same residual functional capacity as Ross could perform: assembler, order filler and information clerk. (Tr. 322.) Ross contends that the jobs identified by the vocational expert are not consistent with the DOT. The vocational expert explained that the jobs he cited were all sedentary, unskilled jobs. (Tr. 322.) He further explained that the information clerk, for example, worked in a shopping mall or clinic and provided directions to customers. (Tr. 323-24.) The vocational expert explained that he used his own vocational expertise and experience to identify the jobs. (Tr. 325.) The ALJ met her burden at step five.[5] "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

In conclusion, the ALJ properly evaluated the evidence in the record and adequately articulated her reasons for denying Ross's claim for supplemental security income. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Ross retained the residual functional capacity to perform sedentary work and was not disabled. Therefore, Ross was not entitled to supplemental security income and her appeal is denied.

---

[5] Ross argues that none of the order filler jobs listed in the DOT match the criteria of unskilled sedentary work. The Court notes that DOT #237.367-014, Information Clerk - Call-out Operator, is a sedentary position with a Specific Vocational Preparation ("SVP") of 2, and DOT #209.567-014 Order Clerk, Food and Beverage is a sedentary position with a SVP of 2.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Ross's appeal from the Commissioner's final decision denying her July 18, 2005, application for supplemental security income is **DENIED.**

**IT IS FURTHER ORDERED** that Ross's Motion for Summary Judgment or Remand (Docket #12) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS ALSO ORDERED** that the Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 17th day of March, 2009.

                                                 **BY THE COURT:**

                                                 *s/ Rudolph T. Randa*
                                                 **HON. RUDOLPH T. RANDA**
                                                 **Chief Judge**